UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| KING & BALLOW, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 3:12-cv-660 |
| ) | Judge Aleta A. Trauger |
| MAINETODAY MEDIA, INC., ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM

The defendant has filed a Motion to Dismiss or Stay (Docket No. 5), to which the plaintiff filed a Response in opposition (Docket No. 10), the defendant filed a Reply (Docket No. 20), and the plaintiff filed a Sur-Reply (Docket No. 23). The defendant has also filed a Motion to Temporarily Stay Fee Arbitration (Docket No. 25), to which the plaintiff filed a Response in opposition (Docket No. 28). For the reasons stated herein, the defendant's Motion to Dismiss or Stay will be denied and the plaintiff's Motion to Temporarily Stay Fee Arbitration will be denied as moot.

## BACKGROUND

**I.  Factual Allegations**[1]

    **A.  The Engagement Agreement**

---

[1]The Motion to Dismiss originally related to the Complaint (Docket No. 1). In response to the Motion to Dismiss, the plaintiff filed both a Response in opposition (Docket No. 10) and a First Amended Complaint (Docket No. 9). In its Reply, the defendant acknowledged that its arguments in support of the Motion to Dismiss the original Complaint applied with equal force to the Amended Complaint. (*See* Docket No. 23 at p. 1, n.1.) Therefore, unless otherwise noted, the factual allegations are drawn from the First Amended Complaint.

1

The plaintiff, King & Ballow, is a law firm operating as a partnership with a principal place of business in Tennessee. King & Ballow maintains no offices in Maine and none of its attorneys are members of the Maine Bar. The defendant, MaineToday Media, Inc. ("MaineToday"), is a Maine corporation headquartered in Maine.

On December 29, 2009, MaineToday entered into an engagement agreement with King & Ballow (First. Am. Compl, Ex. A) ("Engagement Agreement"), under which King & Ballow agreed to represent MaineToday in connection with various legal matters. The Engagement Agreement sets forth the terms of the parties' contractual relationship, including King & Ballow's billing process and MaineToday's obligation to pay King & Ballow in a timely fashion. In relevant part, the letter states as follows:

> Payment is due within 30 days of the date of the statement, unless other arrangements are made in advance. If payment is not received within 30 days after the bill is issued, an interest charge of one and one-half percent per month will be added to the bill. By signing below, you agree to the payment of this charge.
>
> If [MaineToday] ever receives a bill from us and questions the accuracy or propriety of any of the charges or services listed, just send us a letter within fifteen days of the receipt of the bill stating your position and the amount in dispute. . . . By entering into this agreement, you acknowledge that *unless King & Ballow is sent written notification of any error or disputed amount within fifteen days of its receipt of the statement in the manner described above, the information and charges set forth in the statement are accurate, proper, due, and payable*.

(Engagement Agreement at p. 4) (emphasis added). The Engagement Agreement also contains provisions concerning potential litigation in the event of alleged breach of the agreement:

> Should there be litigation between the parties over an alleged breach of the agreement, King & Ballow is entitled to recover its costs and expenses including reasonable attorneys' fees. The parties acknowledge that *this agreement is governed by Tennessee law,* and *consent to the jurisdiction of the federal or state courts in Davidson County, Tennessee, in any action to enforce this agreement*.

(*Id.*) (emphases added).  Finally, the agreement contains a merger clause, which states that "[t]his letter is intended as the final, complete, and exclusive statement of contract between King & Ballow and [MaineToday]."  (*Id.*)  MaineToday Chief Executive Officer ("CEO") Richard Connor signed the agreement on MaineToday's behalf.  (*Id.*)

Between April 1, 2011 and November 4, 2011, King & Ballow represented MaineToday on several legal matters, which broadly included (1) advice and counseling on several labor- and employment-related matters, including, *inter alia*, labor negotiations and arbitration proceedings involving questions of federal law; and (2) litigation support in a case in the United States District Court for the District of Maine, in which two King & Ballow attorneys received admission *pro hac vice*.  King & Ballow did not appear in any arbitration proceedings or participate in collective bargaining negotiations in Maine on behalf of MaineToday.

Pursuant to the Engagement Letter, King & Ballow billed MaineToday for its services during this time frame.  However, MaineToday failed to pay King & Ballow's legal bills, which, as of August 10, 2012, totaled over $200,000, including attorney's fees, expenses, and unpaid interest.  Approximately half of the outstanding fees related to the federal district court matter in which the two King & Ballow attorneys had participated.

### B. Attempts to Collect Payment

Between September 2011 and April 2012, King & Ballow repeatedly requested that MaineToday pay its outstanding legal bills.  MaineToday corporate officers, including its CEO (Connor) and its Chief Financial Officer, Patrick Sweeney, acknowledged orally and in writing that MaineToday in fact owed King & Ballow the outstanding balance and did not dispute the fees charged.  (*See, e.g.*, First Am. Compl. ¶¶ 24 (referencing September 16, 2011 meeting in

which Connor "acknowledged MaineToday owed King & Ballow the entire amount owed for legal services and expenses"); 29 (referencing October 26, 2011 meeting, in which Connor "acknowledged there was no dispute over the fees and that they were all due and owing to King & Ballow"); 39 (referencing April 11, 2012 email from Patrick Sweeney, MaineToday's new CEO, acknowledging that MaineToday owed King & Ballow $191,892.50).[2] King & Ballow also repeatedly requested that MaineToday submit a payment plan, but MaineToday declined to present any type of payment plan for several months.

---

[2]MaineToday has requested that the court strike many of the attachments to the Amended Complaint, which include letters and emails between King & Ballow and MaineToday, on the basis that these materials constitute settlement communications under Fed. R. Civ. P. 408. However, for Rule 408 to apply, there must first be an actual dispute, or at least an apparent difference of view between the parties concerning the validity or amount of the claim. *Dow Chem. Co. & Subsidiaries v. United States*, 250 F. Supp. 2d 748, 804 (E.D. Mich. 2003) (citing Weinstein's Federal Evidence § 408.06, at 408-23 (rev. 2004)); *Advanced Accessory Sys., LLC v. Gibbs*, 71 F. App'x 454, 465, 465 n.7 (6th Cir. 2003) (where communications all took place before filing of legal claim and "the parties had a similar understanding regarding [the plaintiff's] obligation to pay [the defendants]," evidence not subject to exclusion under Rule 408) (citing McCormick on Evidence § 266, at 184 (5th ed. 1999)); *Korn, Womack, Stern & Assocs., Inc. v. Fireman's Fund Ins. Co.*, No. 92-2509, 27 F.3d 566, 1994 WL 264263, at *6 (6th Cir. June 15, 1994) (unpublished); *Commonwealth Aluminum Corp. v. Stanley Metal Ass'n*, 186 F. Supp. 2d 770, 774 (W.D. Ky. 2001) (communication not subject to exclusion under Rule 408, where statement "appears to admit to the validity of the alleged contracts and does not dispute the total amount alleged due"). Here, the communications attached to the First Amended Complaint do not reflect any apparent dispute or apparent difference of view between MaineToday and King & Ballow before this lawsuit was filed concerning the validity or amount of King & Ballow's entitlement to payment under the Engagement Agreement; to the contrary, they reflect that MaineToday acknowledged the validity and amount of the debt. Thus, based on the record before the court, it appears that MaineToday did not assert any objection to the validity of its debt or the amount it owed to King & Ballow before filing its petition with the Maine FAB Commission one month after this lawsuit was filed. Therefore, the challenged communications are not subject to exclusion under Rule 408. Accordingly, the court will consider these communications and the associated First Amended Complaint allegations, which largely mirror the substance of the attachments. *See* Fed. R. Civ. P. 10; *see also In re Backer*, 51 F. App'x 522, 530 (6th Cir. 2002) ("[I]t is not improper for a lower court to consider materials attached to the pleadings, if the content of such materials merely mirrors allegations set forth in the pleadings. Rather, such materials are considered part of the pleadings.").

In September 2011, Connor acknowledged MaineToday's debt to King & Ballow, but stated that MaineToday could not pay King & Ballow until it (MaineToday) received financing to pay outstanding debts. In October 2011, after MaineToday continued to defer paying the debt it owed, King & Ballow withdrew from representing MaineToday. In December 2011, Connor left MaineToday due a "change in direction" at the company. In March 2012, MaineToday announced that it had finalized a financial restructuring plan, under which an outside company agreed to purchase $3.3 million of MaineToday's stock. Two weeks later, Sweeney, who had succeeded Connor as MaineToday's CEO, acknowledged MaineToday's debt to King & Ballow and proposed a repayment plan for the then-outstanding balance of $191,892.50.

Before this lawsuit was filed, MaineToday did not submit any writing to King & Ballow questioning the accuracy or propriety of any charges or services billed to MaineToday between April 1, 2011 and the end of October 2011, when King & Ballow withdrew from representing MaineToday. Therefore, under the plain terms of the Engagement Agreement, MaineToday's failure to pay King & Ballow's legal fees constituted a material breach of the contract, for which MaineToday is liable for (1) the outstanding fees; (2) expenses; and (3) fees and costs associated with seeking recovery from MaineToday. (*See* Engagement Agreement at p. 4.)

As of August 10, 2012, King & Ballow was owed $210,820.95 in damages, not including fees, costs, and expenses associated with enforcing MaineToday's obligations under the Engagement Agreement. King & Ballow asserts claims for breach of contract and for unjust enrichment.

II. **Procedural History and the Maine FAB Commission Proceeding**

On July 25, 2012, approximately one month after King & Ballow filed this lawsuit,

MaineToday filed a petition with the Fee Arbitration Commission of the Maine Board of Overseers of the Bar (hereinafter "Maine FAB Commission") purporting to challenge the reasonableness of the fees charged by King & Ballow. As discussed in more detail herein, under appropriate circumstances, attorneys admitted to the bar of the state of Maine are required to submit disputes concerning their fee agreement to binding arbitration before the Maine FAB Commission. *See generally* Maine Bar Rule 9 (2012).

In its petition to the Maine FAB Commission, MaineToday asserted that, because King & Ballow had engaged in the practice of law within Maine, it was subject to mandatory fee arbitration pursuant to Maine Bar Rule 9.[3] As to the substance of the petition, MaineToday argued, for the first time, that King & Ballow's fees were "unreasonable as they are disproportionately high based on the work performed and the results achieved." (Docket No. 5, Ex. 1 at p. 4.) MaineToday's petition did not disclose the Engagement Letter, under which MaineToday had already contractually waived the right to dispute King & Ballow's fees by failing to object to those fees within 15 days of receipt of each monthly bill, nor did it disclose that MaineToday's corporate officers had admitted on multiple occasions that it owed King & Ballow the full amount that the firm was demanding.

On August 7, 2012, J. Scott Davis, a Bar Counsel for the Maine Board of Overseers of the Bar ("MBOB"), informed King & Ballow that, "[a]s directed by Maine Bar Rule 9(e)(2), I have reviewed the petition and determined that the Fee Arbitration Commission has jurisdiction." (Docket No. 8, Ex. B. The commission's letter directed King & Ballow to attempt to resolve the

---

[3]In the context of briefing the pending motions before this court, the parties have filed copies of certain correspondence with the Maine FAB Commission. The parties do not dispute the authenticity of these materials.

dispute informally by September 7, 2012, after which the commission would commence formal proceedings. (*Id.*) On August 7, 2012, a Board Clerk for the MBOB also sent a notice to counsel for MaineToday, stating that, "[i]f there is a pending action before a court or state agency by either yourself or [counsel for King & Ballow], you should immediately contact the court clerk or the state agency in which the matter is pending to request that action be stayed (stopped) until this dispute is resolved pursuant to Maine Bar Rule 9." (*Id.*, Ex. C.)

On August 17, 2012, King & Ballow wrote to Davis, stating that the Maine FAB Commission lacked jurisdiction to hear the fee dispute. King & Ballow submitted copies of the briefing in this court concerning MaineToday's Motion to Dismiss or Stay, along with a copy of the Engagement Agreement. (Docket No. 25, Ex. A.) King & Ballow's cover letter argued that the Maine FAB Commission did not have jurisdiction and that, in any case, MaineToday had already waived any right to dispute the fees under the terms of the Engagement Agreement.[4] On September 6, 2012, King & Ballow again wrote to Davis, enclosing a copy of the Sur-Reply to the Motion to Dismiss filed in this case and representing that the matter was fully briefed before this court.

On September 7, 2012, a Board Clerk of the MBOB wrote to King & Ballow. (Docket No. 25, Ex. B.) Without acknowledging receipt of the September 6, 2012 supplemental submission from King & Ballow, the Board's letter summarily stated that, "[a]fter review of the above listed correspondence, the Chair of the Fee Arbitration Commission has determined that

---

[4]It appears that MaineToday wrote to Mr. Davis on August 28, 2012, and that Mr. Davis in turn wrote to the parties on August 31, 2012, although neither letter is contained in the record before this court. (*See* Docket No. 25, Ex. 1 (letter from King & Ballow to Davis, referencing 8/28/12 letter from MaineToday and 8/30/12 letter from Davis).)

7

the Fee Arbitration Commission does indeed have jurisdiction, and thus formal proceedings will commence." The letter did not articulate the reasoning by which the Maine FAB Commission had determined that it had jurisdiction over the purported fee dispute. At any rate, the letter informed King & Ballow that it would be required to submit a Reply to MaineToday's position by October 8, 2012, that failure to do so could result in the panel proceeding to hear the Petition based only on submissions and evidence presented by MaineToday, and that the panel's findings and award would bind King & Ballow.

### III. The Parties' Contentions

MaineToday argues that this court should defer to the Maine Board's assertion of jurisdiction over the fee dispute and dismiss this action or stay it pending completion of the Maine FAB Commission's arbitration proceedings pursuant to (a) Maine Bar Rule 9(e), (b) the Federal Arbitration Act, and/or (c) principles of comity and deference. King & Ballow argues that (1) the fee arbitration provisions of Rule 9 of the Maine Bar Rules are, by their own terms, plainly inapplicable to King & Ballow; (2) the court owes no deference to the Maine FAB Commission's inappropriate attempt to exercise jurisdiction over the fee dispute, (3) MaineToday contractually agreed with King & Ballow that any fee dispute would be litigated in a state or federal court in Tennessee, and (4) for Maine to abrogate the Engagement Agreement would raise serious constitutional concerns, at least implicating the Seventh Amendment right to a trial by jury and the Commerce Clause.

## STANDARD OF REVIEW

In deciding a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), the court will "construe the complaint in the light most favorable to the plaintiff, accept its

allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007); *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 619 (6th Cir. 2002). The Federal Rules of Civil Procedure require that a plaintiff provide "'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957) (quoting Fed. R. Civ. P. 8(a)(2)). The court must determine whether "the claimant is entitled to offer evidence to support the claims," not whether the plaintiff can ultimately prove the facts alleged. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S. Ct. 1683, 40 L. Ed. 2d 90 (1974)).

The complaint's allegations, however, "must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). To establish the "facial plausibility" as required to "unlock the doors of discovery," the plaintiff cannot rely on "legal conclusions" or "[threadbare] recitals of the elements of a cause of action," but, instead, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949-50, 173 L. Ed. 2d 868 (2009).[5]

## ANALYSIS

**I.  Overview**

Based on King & Ballow's allegations, MaineToday plainly owes the full amount that King & Ballow has demanded in this case. As an initial matter, MaineToday contractually

---

[5]Because the court finds, for the reasons stated herein, that King & Ballow's request for injunctive relief is moot, the court need not articulate the standard of review applicable to the Motion to Temporarily Stay Fee Arbitration.

9

waived its right to dispute the amounts owed to King & Ballow by failing to challenge the bills within 15 days of receipt – indeed, before this lawsuit, MaineToday did not object to the substance of the bills at all. Furthermore, MaineToday not only failed to assert timely challenges to any of the outstanding bills at any time, it admitted multiple times that it owed the full balance to King & Ballow.

Furthermore, MaineToday explicitly agreed that, to the extent the parties had any dispute concerning the Engagement Agreement, that dispute would be resolved in a state or federal court in Davidson County, Tennessee. MaineToday also explicitly agreed that Tennessee law would govern its fee relationship with King & Ballow. Thus, MaineToday contracted for this court (or a Tennessee state court) to hear disputes concerning enforcement of the Engagement Agreement and to apply Tennessee law in that proceeding.

Apparently in an attempt to avoid its obligation to pay King & Ballow and to circumvent the forum selection clause to which it assented, MaineToday has initiated fee arbitration proceedings in Maine and argues that this court should dismiss or stay the case as a result. For the reasons described herein, MaineToday's *post hoc* invocation of the alleged jurisdiction of Maine FAB Commission to hear this dispute is without merit, Maine Bar Rule 9 does not dictate whether this court may retain jurisdiction over this case, and the court will not stay the case, which is properly before this court pursuant to the express terms of the Engagement Agreement.

## II. **Maine Bar Rules and Maine Code of Professional Conduct**

Certain of the Maine Bar Rules ("MBR") and Maine Rules of Professional Conduct ("MRPC") are relevant here. MBR Rule 1 sets forth the general scope of the Maine Bar Rules:

> The Maine Bar Rules and the Maine Rules of Professional Conduct govern the practice of law by attorneys within this State and the conduct of attorneys with

> respect to their professional activities and as officers of the Court. Any attorney admitted to, or engaging in, the practice of law in this State shall be subject to the Court's supervision and disciplinary jurisdiction and the provisions of these rules. . . . A lawyer admitted to practice in this State is subject to the Court's disciplinary authority, regardless where the lawyer's conduct occurs. A lawyer may be subject to the disciplinary authority of both this jurisdiction and another jurisdiction where the lawyer is admitted for the same conduct.

Thus, the Maine Bar Rules generally apply to "[a]ny attorney . . . engaging in [] the practice of law in this State . . . ." Subject to this general provision, the Maine Bar Rules contain provisions specific to different forms of attorney conduct. Among those provisions is MBR Rule 9, which provides for mandatory arbitration of fee disputes under appropriate circumstances. That rule, in relevant part, provides as follows:

> Upon receiving a complaint from any source regarding legal fees paid to or charged by *an attorney admitted to the Bar of this State*, the Secretary shall forward to such complainant a copy of these procedures and any relevant regulations or rules . . . together with the blank form captioned "Petition for Arbitration of Fee Disputes." Proceedings before a Fee Arbitration Panel of the Commission shall be initiated by the completion and forwarding to the Secretary of the petition . . . ."

By its own terms, this provision relates only to attorneys admitted to the Maine Bar.

Rule 1.5 of the MRPC also relates to fees charged by attorneys. MRPC Rule 1.5(a) states, in relevant part, that "[a] lawyer shall not make an agreement for, charge, or collect an unreasonable fee or an unreasonable amount for expenses." Rule 1.5(g) of the MRPC provides that "[a] lawyer practicing in this State shall submit, upon the request of the client, the resolution of any fee dispute in accordance with Rule 9 [of the Maine Bar Rules]." Comment 9 to Rule 1.5 notes that "[a] mandatory fee arbitration procedure has been established for resolution of fee disputes," and that "[l]awyers must conscientiously comply with the procedure set forth in Maine Bar Rule 9."

11

**III.     Application**

Here, none of the King & Ballow attorneys has been admitted to the Maine Bar, nor did any of the King & Ballow attorneys who worked on matters for MaineToday under the Engagement Agreement appear in any proceeding in Maine state court, a Maine arbitration proceeding, or collective bargaining agreement negotiations in Maine. Although two King & Ballow attorneys appeared *pro hac vice* in a matter in federal district court for the District of Maine, that form of admission does not constitute "admission to the Bar of Maine" as required by MBR Rule 9. Indeed, MaineToday does not appear to dispute that, viewed in isolation, Rule 9 would not apply to King & Ballow. Nevertheless, MaineToday argues that the general scope provisions set forth in MBR Rule 1 and MRPC Rule 1.5(g) control over the more specific – and narrower – scope provision set forth in MBR Rule 9, which by its own terms applies the mandatory fee arbitration process only to attorneys admitted to the Maine Bar. In support of this argument, MaineToday points to two Maine cases construing the application of MBR Rule 9, which it argues support an expansive interpretation of that rule here. *See Bennett v. Prawer*, 786 A.2d 605, 607-08 (Me. 2001); *Anderson v. Elliot*, 555 A.2d 1042 (Me. 1989). However, in both of those cases, the attorneys at issue were members of the Maine Bar. Therefore, the potential application of MBR Rule 9 to out-of-state attorneys (under any set of circumstances) was not at issue.

Contrary to MaineToday's position regarding the interaction between MBR Rule 9 and the other relevant Maine rules, it is a basic tenet of statutory construction under Maine law that specific provisions control over general provisions. *S. Portland Civil Serv. Comm'n v. City of S. Portland*, 667 A.2d 599, 601 (Me. 1995); *Ziegler v. Am. Maize-Prods Co.,* 658 A.2d 219, 222

(Me. 1995); *Camps Newfound/Owatonna Corp. v. Town of Harrison*, 705 A.2d 1109, 1115 (Me. 1998). As the Maine Supreme Court has explained:

> When there is in the same statute a specific provision and also a general one, which in its most comprehensive sense would include matters embraced in the specific provision, the general provision must be understood to affect only those cases within its general language that are not within the provisions of the specific provision. The result is that the specific provision controls.

*Ziegler*, 658 A.2d 219 at 222 (citing 73 Am. Jur. 2d, *Statutes*, § 257 (1974)).

Here, MBR Rule 9 is more specific than the general provisions set forth in MBR Rule 1 and MRPC Rule 1.5. Thus, the court must interpret MBR Rule 9 – the more specific rule – as controlling its own scope, notwithstanding the general terms of MBR Rule 1 and MRPC Rule 1.5. MBR Rule 9 is limited to attorneys "admitted to the Bar of [Maine]." The King & Ballow attorneys have not been admitted to the Maine Bar. Therefore, under a straightforward application of Maine law, they are not subject to MBR Rule 9 mandatory fee arbitration proceedings before the Maine FAB Commission.

### IV. The Maine FAB Commission's Interpretation of its Own Jurisdiction

MaineToday argues that, regardless of this court's independent interpretation of Maine law, this court should defer to the Maine FAB Commission's exercise of jurisdiction. Although the Maine FAB Commission has twice stated that it believes it has jurisdiction over MaineToday's fee dispute complaint, the commission has done so summarily, without articulating any basis for that conclusion. By contrast, as set forth in the previous section, this court does not read MPR Rule 9 as reasonably susceptible to an interpretation that confers jurisdiction on the Commission.

Moreover, if this court were to construe MBR Rule 9 in the manner urged by

13

MaineToday, the court would be faced with potential Tennessee state policy and federal constitutional concerns. First, with respect to contracts governed by Tennessee law, Tennessee has a strong policy interest in enforcing those contracts as they are written. *See Ellis v. Pauline S. Sprouse Residuary Trust*, 280 S.W.3d 806, 814 (Tenn. 2009) ("Contract law in Tennessee plainly reflects the public policy allowing competent parties to strike their own bargains"). Thus, "[w]hen the parties have reduced their agreement to writing, the law favors enforcing these contracts as written." *Id.*; *see also Planters Gin Co. v. Fed. Compress & Warehouse Co.*, 78 S.W.3d 885, 890 (Tenn. 2002) ("If clear and unambiguous, the literal meaning of the language controls the outcome of contract disputes.") Here, by its own terms, the Engagement Agreement is clear and unambiguous: it is governed by Tennessee law, and MaineToday explicitly contracted for the jurisdiction of this court to resolve any disputes. Therefore, this court – not the Maine FAB Commission – has jurisdiction over this case. Moreover, if the First Amended Complaint allegations are true, *there is no dispute to resolve in the first place*: by failing to assert any timely objections to the monthly bills, MaineToday contractually waived its right to dispute the fees – which are therefore "accurate, proper, due, and payable" – and, in any case, has already admitted that it owes the full amount of the debt. Thus, in submitting a manufactured fee "dispute" to the Maine FAB Commission, MaineToday effectively is asking a Maine tribunal to abrogate the terms of a contract governed by Tennessee law, in favor a Maine citizen and against the otherwise enforceable interests of a Tennessee citizen. The presence of these concerns, which are grounded in the application of strong Tennessee policy concerning the enforcement of contracts, militate against deferring to the Maine FAB Commission's expansive – and as yet unarticulated – interpretation of its own authority.

Finally, King & Ballow argues that abrogating the terms of the Engagement Agreement and forcing it to arbitrate in a foreign jurisdiction could violate the federal Commerce Clause and its federal right to a trial by jury. (*See* Docket No. 10 at p. 7 n.2; Docket No. 23 at p. 4 ¶ 9.) Although these may be viable arguments, they have not been fully articulated and the court need not reach them at this stage, in any case.

V.  **The Parties' Respective Requests for Stays**

MaineToday argues that, pursuant to Maine Bar Rule 9(e)(5)(D), this court must stay this action pending the resolution of the Maine FAB Commission proceedings, regardless of the court's assessment of the merits of King & Ballow's position here. This argument is plainly without merit. MBR Rule 9(e)(5)(D) provides that, "[i]f there is then pending before *a court or agency of this State* an action instituted by either petitioner or respondent involving the disputed fees, then such action shall, upon motion of the petitioner, be stayed until such dispute is resolved pursuant to this rule; and the award thereunder shall be determinative of the action so stayed." MBR Rule 9(d)(5)(D) (emphasis added). Thus, the provision only compels Maine state courts and Maine state agencies to stay parallel proceedings, but does not apply to a federal district court sitting in another state – nor could it.[6]

MaineToday also argues that this court should stay the case pursuant to the Federal Arbitration Act. However, the FAA only obligates the parties to enforce an existing obligation

---

[6]MaineToday argues that the term "of this State" modifies the word "agency" but not the word "court," such that the provision requires *any* court to stay the action, not just a Maine court. This is an unnatural reading of the provision. Moreover, the State of Maine does not have jurisdiction over a federal court sitting in another state, in any case. Thus, the court interprets MBR Rule 9(d)(5)(D) as (sensibly) relating only to Maine state courts and Maine state agencies – entities over which Maine legally may exercise control.

15

to arbitrate a dispute.  *See* 9 U.S.C. § 2 (2012); *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000) ("""When asked by a party to compel arbitration under a contract, a federal court must determine whether the parties agreed to arbitrate the dispute at issue.")  Here, the court has found that King & Ballow is not subject to an imputed contractual obligation to arbitrate MaineToday's purported "dispute" in Maine.  Therefore, the FAA is not applicable.

In its Motion to Temporarily Stay Fee Arbitration, King & Ballow simply requested that this court issue an order staying the Maine FAB Commission proceedings until this court determined whether it has authority to proceed with this case.  The issue of whether this court could enjoin the Maine FAB Commission proceedings in the first place – either directly through an order enjoining the commission or indirectly through an order directing MaineToday not to proceed with that arbitration – is a difficult one that may present an issue of first impression within the Sixth Circuit.  *See Six Clinics Holding Corp. v. Cafcomp Sys., Inc.*, 119 F.3d 393, 399 (6th Cir. 1997).  However, the court need not reach this issue, because King & Ballow's request for injunctive relief has been rendered moot by the court's decision concerning MaineToday's Motion to Dismiss or Stay.

## CONCLUSION

For the reasons stated herein, MaineToday's Motion to Dismiss or Stay will be denied, and King & Ballow's Motion to Temporarily Stay Fee Arbitration will be denied as moot.

An appropriate order will enter.

_____
ALETA A. TRAUGER
United States District Judge