UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| KING & BALLOW, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 3:12-cv-660 |
| ) | Judge Aleta A. Trauger |
| MAINETODAY MEDIA, INC., ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM IN SUPPORT OF PRELIMINARY INJUNCTION

On October 4, 2012, the court held a hearing ("PI Hearing") on plaintiff King & Ballow's Motion for Preliminary Injunction (Docket No. 36). At that hearing, the court granted the requested preliminary injunction and ordered the defendant, MaineToday Media, Inc. ("MaineToday") to submit a written request to the Fee Arbitration Commission of the Board of Overseers of the Bar of Maine ("Maine FAB Commission") to dismiss without prejudice its Petition for Arbitration of Fee Dispute. (Docket No. 43.) MaineToday has complied with that order and the Maine FAB Commission has dismissed MaineToday's petition. (Docket No. 45.) This Memorandum further explains the court's basis for granting the preliminary injunction.

## BACKGROUND

The basic facts of this case are set forth in detail in the court's previous opinion concerning King & Ballow's Motion to Stay. *See King & Ballow v. MaineToday Media, Inc.*, Case No. 3:12-cv-660, 2012 WL 4192522 (M.D. Tenn. Sept. 19, 2012) [Docket No. 30 in this case; associated Order at Docket No. 31]. At the PI Hearing, King & Ballow also presented (1) an affidavit from MaineToday's former Chief Executive Officer, Richard Connor, which

1

substantially corroborated many of the allegations set forth in King & Ballow's Amended Complaint, and (2) the testimony of King & Ballow's originating partner, Robert L. Ballow, who testified concerning the potential irreparable reputational harm that King & Ballow would suffer if the Maine FAB Commission entered a default judgment against it for charging unreasonable fees or failing to provide adequate legal services.

## STANDARD OF REVIEW

Under Fed. R. Civ. P. 65 (2012), the court may issue a preliminary injunction under appropriate circumstances. In assessing whether an injunction is appropriate, the court applies the following standard:

> A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of the equities tips in his favor, and that an injunction is in the public interest.

*Obama for Am. v. Husted*, - - - F.3d - - - , 2012 WL 4753397, at *4 (6th Cir. 2012) (submitted for publication) (citing *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20, 129 S. Ct. 365, 172 L. Ed. 2d 249 (2008)).

## ANALYSIS

### I. Jurisdiction

In its previous opinion, the court held that it – not the Maine FAB Commission – has jurisdiction over this fee dispute. *King & Ballow*, 2012 WL 4192522, at *7-*8. The court found, in relevant part, that (1) the fee agreement between King & Ballow and MaineToday unambiguously provided for the jurisdiction of this court (as a Tennessee court) over any fee dispute between the parties; (2) under a straightforward application of Maine rules of statutory construction, the Maine mandatory fee arbitration procedures do not apply to MaineToday's

2

asserted grievances, in any case; and (3) enforcing the fee agreement as written furthers strong Tennessee public policy. *Id.* at \*5-\*8. Accordingly, the court rejected MaineToday's argument that the Federal Arbitration Act ("FAA"), which presumes that the parties have entered into a written agreement to arbitrate, required the court to compel King & Ballow to arbitrate the purported fee dispute before the Maine FAB Commission.

Before the PI Hearing, and without seeking leave of court, MaineToday filed a Notice of Appeal of this court's September 19, 2012 Order, contending that the court should have compelled King & Ballow to arbitrate pursuant to the FAA. (Docket No. 39.) As the court explained at the PI Hearing, the court has construed MaineToday as improperly attempting an interlocutory appeal without leave of court pursuant to 28 U.S.C. § 1292(b). (*See* Docket No. 47, Transcript of PI Hearing, at 8:8-9:6.) Accordingly, MaineToday's Notice of Appeal did not divest this court of jurisdiction over this case.[1] *See* 28 U.S.C. § 1292(b) ("[A]pplication for an appeal hereunder shall not stay proceedings in the district court unless the district judge or the Court of Appeals or a judge thereof shall so order.")

## II. Application of Rule 65 Factors

### A. Likelihood of Success on the Merits

The court incorporates by reference its previous opinion concerning the Motion to Stay, which articulates the various reasons why King & Ballow is likely to succeed on the merits. *See generally, King & Ballow*, 2012 WL 4192522. The Connor Affidavit substantially corroborated the relevant Amended Complaint allegations on which the court's previous opinion was based.

---

[1]Following the PI Hearing, MaineToday filed a Motion for Certification for Interlocutory Appeal and for Stay Pending Appeal, which is now pending, awaiting King & Ballow's response. (Docket No. 42.)

Briefly, the record establishes that King & Ballow and MaineToday entered into a binding and enforceable fee agreement, pursuant to which MaineToday agreed to pay King & Ballow specified rates in return for King & Ballow's representation of MaineToday in certain legal matters. The fee agreement obligated MaineToday to assert any objections to King & Ballow's monthly legal bills in writing within 15 days of receiving each bill. MaineToday also agreed that, in the absence of any timely objection, the amount demanded by King & Ballow was "accurate, proper, due, and payable."

King & Ballow performed under the agreement and received timely payments through May 2011. However, in May 2011, MaineToday ran into financial difficulties and fell behind on paying King & Ballow's fees. Throughout late 2011, when King & Ballow withdrew from representing MaineToday due to continued non-payment of its bills, MaineToday acknowledged that it owed the full amount of the outstanding balance to King & Ballow. Indeed, Connor avers that King & Ballow "always provided quality legal services with reasonable fees to MaineToday," MaineToday "never disputed the accuracy or reasonableness of any King & Ballow bills," and "the only reason MaineToday had not paid King & Ballow was because of its [MaineToday's] lack of funding." (*See* Connor Aff. ¶¶9-10, 19.)

After extensive fruitless efforts to collect the outstanding balance from MaineToday, King & Ballow filed this lawsuit. Based on the record before the court, it appears that MaineToday owes the full balance to King & Ballow, particularly where (1) MaineToday never asserted any timely objections to King & Ballow's monthly bills, as the fee agreement required; and (2) MaineToday's corporate officers acknowledged that the full balance was due and owing. Therefore, King & Ballow has demonstrated a substantial likelihood of success on the merits.

B. **Irreparable Harm**

This court has already found that it has jurisdiction over this case and that, by the same token, the Maine FAB Commission does not. Nevertheless, notwithstanding this court's previous opinion and order exercising its jurisdiction over the case, MaineToday continued to press forward with its petition to the Maine FAB Commission. Pursuant to the petition and the associated Maine Bar Rules that govern the proceedings, the Maine FAB Commission had ordered King & Ballow to file a Reply to MaineToday's petition by October 8, 2012. The commission warned that, pursuant to the Maine Bar Rules, failure to respond to the petition would result in the commission's proceeding to hear that petition only on submissions and evidence presented by MaineToday and that the commission's findings and award would bind King & Ballow.

At the PI Hearing, the uncontroverted testimony of Robert Ballow established that King & Ballow has represented a host of newspaper clients for approximately 40 years, that it has assiduously sought to uphold its business reputation within that industry, and that, until MaineToday filed its petition to the Maine FAB Commission, King & Ballow had never had a client question its services or its billings. Furthermore, Ballow testified that the newspaper industry is a tight-knit industry in which, not surprisingly, information travels quickly. Ballow also testified that, if the commission were to declare that King & Ballow's fees were unreasonable or that King & Ballow had provided inadequate or unwarranted legal services, other newspapers would likely learn of that finding, thereby substantially damaging King & Ballow's reputation and goodwill within the industry. (*See, e.g.*, PI Hearing Transcript, Testimony of Robert Ballow, at 47:22-23 (stating that, if the commission were to find that King & Ballow's

5

legal services were not adequate, not warranted, and/or unreasonable, "it would have an extremely serious impact" on King & Ballow's reputation).) Finally, Ballow explained that it would be difficult to determine the extent of any damage to King & Ballow's goodwill in the event of such a finding.

Thus, absent an injunction, King & Ballow was caught between a rock and a hard place: although this court has exercised jurisdiction over the dispute, King & Ballow nevertheless faced the prospect of the Maine FAB Commission issuing a default judgment against it based on the unilateral presentation of evidence by MaineToday, which would substantially (and unjustifiably) harm King & Ballow's goodwill with its clients or potential clients.

"An injury is not fully compensable by money damages if the nature of the plaintiff's loss would make damages difficult to calculate." *Basicomputer Corp. v. Scott*, 973 F.2d 507, 511 (6th Cir. 1992). "The loss of customer goodwill often amounts to irreparable injury because the damages flowing from such losses are difficult to compute." *Id.* at 512 (upholding district court finding of irreparable injury based, in part, upon plaintiff's allegation of "loss of customer goodwill"); *see also Henkel Corp. v. Cox*, 386 F. Supp. 2d 898, 904 (E.D. Mich. 2005) (finding that potential loss of customer goodwill from misappropriation of trade secrets was "inherently difficult to calculate and . . . sufficient to support an injunction"); *Int'l Sec. Mgm't Grp. Inc. v. Sawyer*, No. 3:06-cv-0456, 2006 WL 1638537, at *9 (M.D. Tenn. June 6, 2006) (finding that, where plaintiff had "reasonably demonstrated" that total damage to its goodwill would be difficult to calculate, there was a strong possibility of irreparable harm). Similarly, injury to reputation is not fully compensable by money damages. *See United States v. Miami Univ.*, 294 F.3d 797, 819 (6th Cir. 2002) (finding that "injury to reputation" was "difficult to calculate" and,

therefore, supported a finding of irreparable harm); *Economou v. Physicians Weight Loss Ctrs. of Am.*, 756 F. Supp. 1024, 1039 (N.D. Ohio 1991) (finding that "loss of control of reputation" and "loss of good will" constituted "sufficient grounds for a finding of irreparable injury"); *Compuserve Inc. v. Cyber Promotions, Inc.*, 962 F. Supp. 1015, 1027-28 (S.D. Ohio 1997) (where defendant's activities harmed plaintiff's "reputation and goodwill," the potential damages constituted "the sort of injury that warrants the issuance of a preliminary injunction because actual loss is impossible to compute"); *see also Doherty v. City of Maryville*, No. 3:07-cv-157, 2009 WL 2823670, at *4 (E.D. Tenn. Aug. 28, 2009); *Holley Performance Prods., Inc. v. Smith-CNC China Network Co.*, Civil Action No. 1:06CV-165-M, 2006 WL 3256743, at *4 (W.D. Ky. Nov. 9, 2006). Here, King & Ballow has demonstrated that an adverse ruling from the Maine FAB Commission would likely cause it to suffer substantial harm to its goodwill and reputation and that the damages from that harm would be difficult to measure. Accordingly, King & Ballow met its burden to show that it would likely suffer irreparable harm if the court did not restrain MaineToday from proceeding with the fee arbitration petition.[2]

### C. Balance of the Equities

In assessing the balance of the equities, courts may consider the relative burdens on the parties and third parties who may be affected by the preliminary relief sought. *See, e.g.*, *Obama for Am.*, 2012 WL 4753397, at *12 (comparing respective burdens of preliminary injunction on voters, the State, and local election boards); *see also Eberspaecher N. Am., Inc. v. Nelson Global*

---

[2]At the PI Hearing, MaineToday argued, for the first time and without citation to any legal authority, that restraining it from pursuing the fee arbitration petition would frustrate its federal First Amendment right to petition the government for a redress of grievances. This theory was not well-articulated and, at any rate, the court found that it had no application to this case, at least with respect to the pending motion. (*See* Transcript of PI Hearing at 59:9-13.)

7

*Prods., Inc.*, No. 12-11045, 2012 WL 1247174, at *6 (E.D. Mich. Apr. 13, 2012) (weighing whether defendant had shown any "concrete, countervailing harm" to itself or the public); *Bokhari v. Metro. Gov't of Nashville & Davidson Cnty.*, No. 3:11-00088, 2012 WL 1165907 (M.D. Tenn. Apr. 9, 2012) (weighing whether defendant had shown substantial harm to others).

Here, MaineToday has not established that there is any risk of substantial harm to others if the court restrains it from pursuing its fee arbitration petition. The Maine FAB Commission has not been harmed – indeed, as of the date of the PI Hearing, the commission had not even received a Reply to the petition from King & Ballow, let alone conducted any live proceedings. MaineToday is not harmed, because it may litigate its reasonableness arguments in this court.[3] Furthermore, the court is confident that, if this court's previous opinion exercising its jurisdiction over this case were reversed by the Sixth Circuit, the Maine FAB Commission would permit MaineToday to re-file its petition. By contrast, as described herein, it would have caused substantial and irreparable to King & Ballow if the court did not restrain MaineToday from pursuing the fee arbitration petition. Accordingly, the balance of the equities plainly favored granting King & Ballow's requested injunction.

### D. Public Interest

Restraining MaineToday from pursuing the fee arbitration petition furthers the public interest in several respects. Tennessee has a strong public policy favoring the enforcement of agreements as they are written. *See Ellis v. Pauline S. Sprouse Residuary Trust*, 280 S.W.3d 806, 814 (Tenn. 2009); *Planters Gin Co. v. Fed. Compress & Warehouse Co.*, 78 S.W. 3d 885, 890

---

[3] The court makes no finding at this stage as to whether MaineToday waived its right to contest the reasonableness of King & Ballow's fees by failing to assert timely objections pursuant to the terms of the fee agreement.

(Tenn. 2002). The fee agreement here plainly obligated both parties to litigate any fee dispute in a *court* in Tennessee; the fee agreement contained no arbitration clause. Thus, there is a strong public policy interest in enforcing the parties' agreement to litigate before *this* court and a corresponding interest in *not* forcing King & Ballow to arbitrate a dispute that the parties expressly agreed *not* to arbitrate.

Furthermore, there is a federal policy interest in having parties abide by federal court rulings. Here, as of the date of the PI Hearing, MaineToday had noticed an improper interlocutory appeal without seeking leave of court, apparently in an effort to divest this court of jurisdiction. At the same time, MaineToday was pressing forward with the fee petition proceedings, notwithstanding this court's finding that, on both procedural and substantive grounds, MaineToday had improperly invoked those proceedings in the first place. Thus, MaineToday essentially sought to nullify the effect of this court's previous order without following appropriate procedures. Accordingly, restraining MaineToday from pursuing the fee petition serves the public interest in effectuating this court's previous order and preventing MaineToday from essentially circumventing it.

## **CONCLUSION**

For the reasons stated herein and on the record at the PI Hearing, King & Ballow's Motion for Preliminary Injunction was granted and MaineToday was ordered to file a notice seeking withdrawal of its fee petition before the Maine FAB Commission.

An appropriate Preliminary Injunction was previously entered at Docket No. 43.

_____
ALETA A. TRAUGER
United States District Judge

9